IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| **UNITED STATES of AMERICA** | ) | DOCKET NO. 3:16-CR-221-MOC |
| | ) | **SECOND SUPERSEDING** |
| v. | ) | **BILL OF INDICTMENT** |
| | ) | |
| **(1) ROBERT LESLIE STENCIL,** | ) | Vio: 18 U.S.C. § 1349 |
| **(2) DANIEL THOMAS BROYLES, SR.,** | ) | 18 U.S.C. § 1341 |
| **(3) KRISTIAN F. SIERP,** | ) | 18 U.S.C. § 1343 |
| **(4) LUDMILA O. STENCIL,** | ) | 18 U.S.C. § 2326(2)(A) & (B) |
| **(5) MARTIN DELANIE LEWIS,** a/k/a | ) | 18 U.S.C. § 1957(a) |
| Louis Michaels**,** | ) | 18 U.S.C. § 1956(a)(2)(A) & (i)(1)(B) |
| **(6) NICHOLAS FLEMING,** a/k/a Nick | ) | 18 U.S.C. § 982 |
| Franklin**,** | ) | 28 U.S.C. § 2461(c) |
| **(7) MICHAEL ALLEN DUKE,** a/k/a | ) | 18 U.S.C. § 2 |
| Mike West**,** | ) | |
| **(8) PAULA SACCOMANNO,** | ) | |
| | ) | |
| **(9) DENNIS SWERDLEN,** | ) | |
| and | ) | |
| **(10)** ▮▮▮▮▮▮▮▮▮▮▮▮▮ | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THE GRAND JURY CHARGES**:

At all times relevant to this Indictment:

Introduction

1. Niyato Industries, Inc. ("Niyato") was a company incorporated in Nevada and registered as an operating entity in Charlotte, North Carolina. Niyato maintained a bank account at J.P. Morgan Chase with account number ending in #9352. Niyato's corporate address was a private mail box in a commercial mail receiving agency at 1235-E East Boulevard, Suite 130, Charlotte, North Carolina.

1

2. Defendant **ROBERT LESLIE STENCIL**, was a United States citizen residing in Charlotte, North Carolina. **ROBERT STENCIL** founded Niyato in 2010 and was the registered President and self-designated Chief Executive Officer of Niyato. **ROBERT STENCIL** is married to defendant Ludmila Stencil.

3. Defendant **DANIEL THOMAS BROYLES, SR.**, was a United States citizen residing in Malibu, California.

4. Defendant **KRISTIAN F. SIERP**, was a United States citizen residing in Costa Rica. **SIERP** owned and operated a telemarketing call center in Costa Rica.

5. Defendant **LUDMILA O. STENCIL**, the self-designated Secretary of Niyato, worked with her husband defendant Robert Stencil, in facilitating Niyato's operations and resided in Charlotte, North Carolina.

6. Defendant **MARTIN DELANIE LEWIS**, a/k/a Louis Michaels, d/b/a LM3 Consulting LLC, was a United States citizen residing in Frisco, Texas.

7. Defendant **NICHOLAS FLEMING**, a/k/a Nick Franklin, d/b/a Marketing Advisory Services LLC, was a United States citizen residing in Northridge, California.

8. Defendant **MICHAEL ALLEN DUKE**, a/k/a Mike West, d/b/a NWM LLC and Absolute Rarities LLC, was a United States citizen residing in Richardson, Texas.

9. Defendant **PAULA SACCOMANNO**, d/b/a Exclusive Marketing, was a United States citizen residing in Boca Raton, Florida.

10. Defendant **DENNIS SWERDLEN**, d/b/a Exclusive Marketing, was a United States citizen residing in Boca Raton, Florida.

11. ███████████████████████████████████████████████

███████████████████████████

## COUNT ONE
### (CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD - 18 U.S.C. SECTION 1349)

The Conspiracy

12. From at least January 2012, the exact date being unknown to the Grand Jury, through on or about August 18, 2016, in Charlotte, Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants

**ROBERT LESLIE STENCIL**,
**DANIEL THOMAS BROYLES, SR.**,
**KRISTIAN F. SIERP**,
**LUDMILA O. STENCIL**,
**MARTIN DELAINE LEWIS**,
**NICHOLAS FLEMING**,
**MICHAEL ALLEN DUKE**,
**PAULA SACCOMANNO**,
**DENNIS SWERDLEN**,
and
███████████████,

together with other conspirators, both known and unknown to the Grand Jury, knowingly combined, conspired, confederated, and agreed together, and with each other, to commit the following offenses:

    a. To knowingly and willfully devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud did knowingly and willfully place and caused to be placed in a post office and authorized depository for mail matter, and to be sent and delivered by the Postal Service and by a private and commercial interstate carrier, mail matter, specifically victim

3

investments in Niyato Industries, Inc., in violation of Title 18, United States Code, Section 1341; and

      b.     To knowingly and willfully devise scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, specifically wire transfers of victim investment funds into and from the bank account of Niyato Industries, Inc., in violation of Title 18, United States Code, Section 1343.

<u>Purpose of the Conspiracy</u>

13.    The purpose of the conspiracy was to: (a) make materially false and fraudulent representations to investors regarding the nature of Niyato's facilities, operations, management, expertise, achievements, and stock value to induce investors to purchase Niyato stock; and (b) enrich **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LUDMILA STENCIL**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ▬▬▬▬▬, and others, who used the proceeds of the stock sales for their personal benefit.

<u>Manner and Means of the Conspiracy and the Scheme to Defraud</u>

14.    It was part of the conspiracy and scheme to defraud, and among the manner and means by which the defendants and their co-conspirators carried out the conspiracy, that:

    a.     **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LUDMILA STENCIL**, **LEWIS, FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ▬▬▬▬▬, and others

contacted targeted victims—at least ten of whom were over the age of 55—by telephone and email to induce those victims to purchase Niyato stock.

    b.  **LEWIS** used the alias "Louis Michaels" and the fabricated email account "lmicheals.niyato@gmail.com" to mask his true identity and background from victims.

    c.  **DUKE** used the alias "Mike West" and the fabricated email account "niyatoinfo@gmail.com" to mask his true identity and background from victims.

    d.  **FLEMING** used the alias "Nick Franklin" and the fabricated email accounts "niyato.billing@mail.com" and "nick.niyato@mail.com" to mask his true identity and background from victims.

    e.  **SIERP** used the aliases "Dave Anderson" and "Anderson Advisors" as well as the fabricated email account "andersonadvisors@yahoo.com" and "dave@diversified-equities.com" to mask his true identity and background from victims.

    f.  **SIERP** and co-conspirators working in his telemarketing call center in Costa Rica also used Voice over Internet Protocol (VoIP) in calling victims. The VoIP technology, which utilized computers to make telephone calls over the Internet, allowed **SIERP** and co-conspirators to use recognizable United States area codes to make it falsely appear on victims' caller identification devices that their calls were made from somewhere in the United States when, in fact, the calls originated in Costa Rica.

    g.  To induce victims to purchase Niyato stock, **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LUDMILA STENCIL**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ▬▬▬▬▬▬, and others made numerous false and fraudulent representations, both in direct exchanges with victims and through published and publicly posted materials.

5

These false and fraudulent representations included, among other things, that Niyato: had a headquarters in Charlotte, North Carolina, and at least one operational facility; had manufactured electric vehicles and sold 2,700 such vehicles; was an original equipment manufacturer of compressed natural gas (CNG) and liquid petroleum gas (LPG) vehicles and had been contracted to convert at least 150 such vehicles; possessed patented technology and proprietary hardware; held orders for hundreds of vehicles in production; was contracted to establish 5,000 CNG pumps across the United States; and employed as its Vice Chairman and Chief Operating Officer a former executive of Toyota Motor Corporation.

      h.      To further induce victims to invest in Niyato stock, **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ███████, and others falsely told victims that Niyato's stock was marketable, on the verge of an initial public offering (IPO), and would have a value of at least $5.00 per share after the IPO. **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ███████, and others then falsely represented that victims had only a brief opportunity to purchase Niyato stock for $0.50 per share in a pre-public offering—thus promising a high-yield return on victims' investments.

      i.      **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ███████, and others also falsely represented to victims orally and in a Private Placement Memorandum they drafted and distributed to victims that Niyato would use 97.1 percent of invested funds as working capital for (i) administrative, salary and general expenses of the Company and (ii) the Company's advertising and promotion of its products. Similarly, **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LEWIS**, **FLEMING**,

**DUKE**, **SACCOMANNO**, **SWERDLEN**, ▬▬▬▬▬▬, and others falsely represented to victims orally and through marketing materials that Niyato would use the majority of investor funds to expand existing production facilities, develop infrastructure, increase inventory, further operations, and prepare for an imminent stock IPO.

j. Once a victim agreed to purchase Niyato stock, **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ▬▬▬▬▬▬, and others continued to contact the victim to persuade the victim to make additional purchases of Niyato stock to allegedly maximize the victim's investment gains. In truth and in fact, **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LUDMILA STENCIL**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, and ▬▬▬▬▬▬, knew that the proceeds of Niyato stock sales were not invested in Niyato, but paid out to them and others for their personal benefit.

k. To obtain victims' money, **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LUDMILA STENCIL**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ▬▬▬▬▬▬, and others instructed victims to mail payments for Niyato stock to Niyato at the private mail box identified as Niyato's corporate address in Charlotte, North Carolina, or to wire payments directly into Niyato's J.P. Morgan Chase bank account, which **ROBERT STENCIL** and **LUDMILA STENCIL** controlled.

l. **ROBERT STENCIL** and **LUDMILA STENCIL** received and deposited into Niyato's bank account all victim payments mailed to the private mail box. **ROBERT STENCIL** and **LUDMILA STENCIL** also monitored Niyato's bank account for victim payments made by wire transfers directly into that account.

m. Upon **ROBERT STENCIL** and **LUDMILA STENCIL**'s receipt of victim funds, **LUDMILA STENCIL**, in her represented capacity as Niyato's Corporate Secretary, would issue and send the victim a Niyato stock certificate that she had signed.

n. Once a victim investor's funds were deposited into Niyato's bank account, **ROBERT STENCIL** and **LUDMILA STENCIL** distributed from that account by wire transfer a sales commission payment of approximately 50 percent of the victim's funds to the bank account(s) of the co-conspirator(s) who had contacted the victim and induced the victim to purchase Niyato stock. **ROBERT STENCIL** and **LUDMILA STENCIL** specifically directed wire transfers from the Niyato bank account to bank accounts controlled by **DUKE** and **BROYLES** in amounts equivalent to approximately 50 percent of the sums invested by victims whom **DUKE** and **BROYLES** solicited. Similarly, after receiving investments from victims whom **SIERP**, **FLEMING**, **SACCOMANNO**, **SWERDLEN** and ▓▓▓▓▓▓ solicited, **ROBERT STENCIL** and **LUDMILA STENCIL** wired approximately 40-45 percent of the invested funds to domestic bank accounts controlled by the respective defendants and approximately 5-10 percent of the invested funds to one of **BROYLES**'s bank accounts (as a result of the fact that **BROYLES** recruited the other defendants into the scheme). For victims solicited by **LEWIS**, **ROBERT STENCIL** and **LUDMILA STENCIL** wired approximately 45 percent of the invested funds to the domestic bank account controlled by **LEWIS** and approximately 5 percent of the invested funds to one of **BROYLES**'s bank accounts.

o. After **ROBERT STENCIL** and **LUDMILA STENCIL** had transferred victim funds to **SIERP**'s domestic SunTrust bank account, **SIERP** would withdraw those funds in Costa Rica by means of cash ATM withdrawals.

8

p. Of the remaining victim funds that they did not pay as sales commission to **BROYLES**, **SIERP**, **LEWIS, FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ▇▇▇▇▇▇, and other co-conspirators, **ROBERT STENCIL** and **LUDMILA STENCIL** spent the funds for their own personal benefit, either directly or by transferring the funds to their personal bank accounts.

15. **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LUDMILA STENCIL**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ▇▇▇▇▇▇, and others used invested victim funds for their personal benefit, not to develop and operate Niyato as a viable business.

16. **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LUDMILA STENCIL**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO SWERDLEN,** and ▇▇▇▇▇▇, never initiated an IPO for Niyato stock.

17. Through their actions, including their misuse of invested victim funds, **ROBERT STENCIL**, **BROYLES**, **SIERP**, **LUDMILA STENCIL**, **LEWIS**, **FLEMING**, **DUKE**, **SACCOMANNO**, **SWERDLEN**, ▇▇▇▇▇▇, and others made Niyato and its stock worthless.

All in violation of Title 18, United States Code, Sections 1349 and 2326(2)(A) & (B).

## COUNTS TWO THROUGH FIFTEEN
### (MAIL FRAUD - 18 U.S.C. SECTION 1341)

18. The Grand Jury realleges and incorporates by reference paragraphs 1 through 11 and 13 through 17 of this Indictment.

19. From at least January 2012, the exact date being unknown to the Grand Jury, through on or about August 18, 2016, in Charlotte, Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants

**ROBERT LESLIE STENCIL**,
**DANIEL THOMAS BROYLES, SR.**,
**KRISTIAN F. SIERP**,
**LUDMILA O. STENCIL**,
**MARTIN DELAINE LEWIS**,
**NICHOLAS FLEMING**,
**MICHAEL ALLEN DUKE**,
**PAULA SACCOMANNO**,
**DENNIS SWERDLEN**,
and
███████████,

together with others known and unknown to the Grand Jury, knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

<u>Purpose of the Scheme and Artifice</u>

20. The Grand Jury realleges and incorporates by reference paragraph 13 of this Indictment as a description of the purpose of the scheme and artifice.

<u>The Scheme and Artifice</u>

21. The Grand Jury realleges and incorporates by reference paragraph 14 of this Indictment as a description of the scheme and artifice.

10

Use of the Mails

22. On or about the dates set forth below, each such date constituting a separate count of the Indictment, in the Western District of North Carolina and elsewhere, the defendants,

**ROBERT LESLIE STENCIL**,
**DANIEL THOMAS BROYLES, SR.**,
**KRISTIAN F. SIERP**,
**LUDMILA O. STENCIL**,
**MARTIN DELAINE LEWIS**,
**NICHOLAS FLEMING**,
**MICHAEL ALLEN DUKE**,
**PAULA SACCOMANNO**,
**DENNIS SWERDLEN**,
and


together with others known and unknown to the Grand Jury, did knowingly and willfully place and caused to be placed in a post office and authorized depository for mail matter, and to be sent and delivered by the Postal Service and by a private and commercial interstate carrier, mail matter, specifically victim investments in Niyato Industries, Inc., for the purpose of executing the scheme to defraud, and attempting to do so:

| Count | Sender Initials | Mail Matter Sent From | Received | Approximate Date |
|---|---|---|---|---|
| 2 | LT | Newman Lake, WA | Charlotte, NC | 12/07/15 |
| 3 | EF | Golden, CO | Charlotte, NC | 2/25/2016 |
| 4 | TW | Williams, AZ | Charlotte, NC | 2/17/2016 |
| 5 | LF | Lafayette, CA | Charlotte, NC | 3/04/2016 |
| 6 | WH | Davenport, IA | Charlotte, NC | 4/05/2016 |
| 7 | RS, KS & JG | Bridgman, MI | Charlotte, NC | 4/22/2016 |
| 8 | PM | Phoenix, AZ | Charlotte, NC | 5/04/2016 |
| 9 | EF | Golden, CO | Charlotte, NC | 5/24/2016 |
| 10 | RK | McKinney, TX | Charlotte, NC | 5/25/2016 |
| 11 | RR | Truckee, CA | Charlotte, NC | 5/26/2016 |
| 12 | RB | La Center, KY | Charlotte, NC | 6/13/2016 |

| Count | Sender Initials | Mail Matter Sent From | Received | Approximate Date |
|---|---|---|---|---|
| 13 | EG | Peoria, IL | Charlotte, NC | 6/13/2016 |
| 14 | LF | Lafayette, CA | Charlotte, NC | 6/15/2016 |
| 15 | VM | Muscatine, IA | Charlotte, NC | 6/16/2016 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

# COUNTS SIXTEEN THROUGH TWENTY-NINE
## (WIRE FRAUD - 18 U.S.C. SECTION 1343)

23. The Grand Jury realleges and incorporates by reference paragraphs 1 through 11 and 13 through 17 of this Indictment.

24. From at least January 2012, the exact date being unknown to the Grand Jury, through on or about August 18, 2016, in Charlotte, Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants

**ROBERT LESLIE STENCIL**,
**DANIEL THOMAS BROYLES, SR.**,
**KRISTIAN F. SIERP**,
**LUDMILA O. STENCIL**,
**MARTIN DELAINE LEWIS**,
**NICHOLAS FLEMING**,
**MICHAEL ALLEN DUKE**,
**PAULA SACCOMANNO**,
**DENNIS SWERDLEN**,
and
████████████

together with others known and unknown to the grand jury, knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

<u>Purpose of the Scheme and Artifice</u>

25. The Grand Jury realleges and incorporates by reference paragraph 13 of this Indictment as a description of the purpose of the scheme and artifice.

<u>The Scheme and Artifice</u>

26. The Grand Jury realleges and incorporates by reference paragraph 14 of this Indictment as a description of the scheme and artifice.

<u>Use of the Wires</u>

13

27. On or about the dates set forth below, each such date constituting a separate count of the Indictment, in the Western District of North Carolina and elsewhere, the defendants,

**ROBERT LESLIE STENCIL**,
**DANIEL THOMAS BROYLES, SR.**,
**KRISTIAN F. SIERP**,
**LUDMILA O. STENCIL**,
**MARTIN DELAINE LEWIS**,
**NICHOLAS FLEMING**,
**MICHAEL ALLEN DUKE**,
**PAULA SACCOMANNO**,
**DENNIS SWERDLEN**,
and
█████████,

together with others known and unknown to the Grand Jury, did knowingly and willfully transmit, and cause to be transmitted, the following wire transfers in interstate commerce to and from the Niyato bank account or a co-conspirator's bank account for the purpose of receiving victim investor funds or for making commission payments for the inducement of victim investor funds, in furtherance of the scheme to defraud:

| Count | Sender | Recipient | Approximate Date | Approximate Amount |
|---|---|---|---|---|
| 16 | Niyato | Swerdlen & Saccomanno | 12/18/2015 | $4,000 |
| 17 | Niyato | Fleming | 3/04/2016 | $2,250 |
| 18 | Niyato | Duke | 3/09/2016 | $12,500 |
| 19 | Niyato | Fleming | 4/12/2016 | $6,750 |
| 20 | Niyato | Sierp | 4/19/2016 | $10,000 |
| 21 | Niyato | Sierp | 4/26/2016 | $8,400 |
| 22 | Niyato | Swerdlen & Saccomanno | 4/26/2016 | $2,000 |
| 23 | Niyato | Sierp | 5/2/2016 | $4,000 |
| 24 | Niyato | Swerdlen & Saccomanno | 5/31/2016 | $10,000 |

| Count | Sender | Recipient | Approximate Date | Approximate Amount |
|-------|--------|-----------|------------------|--------------------|
| 25 | Niyato | Fleming | 6/01/2016 | $2,250 |
| 26 | DD | Niyato | 6/20/2016 | $8,000 |
| 27 | Niyato | Lewis | 6/21/2016 | $3,200 |
| 28 | Niyato | Broyles | 6/21/2016 | $12,500 |
| 29 | Niyato | Broyles | 6/22/2016 | $12,500 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS THIRTY THROUGH THIRTY-FOUR
## (MONEY LAUNDERING – MONETARY TRANSACTION - 18 U.S.C. Section 1957(a))

28. The Grand Jury realleges and incorporates by reference paragraphs 1 through 4, 6, and 8 of this Indictment.

29. On or about the dates set forth below, each such date constituting a separate count of the Indictment, in the Western District of North Carolina and elsewhere, the defendants,

**ROBERT LESLIE STENCIL**,
**DANIEL THOMAS BROYLES, SR.**,
**LUDMILA O. STENCIL**,
**MARTIN DELAINE LEWIS**,
and
**MICHAEL ALLEN DUKE**,

together with others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the transfer of funds from Niyato's bank account to **BROYLES**'s Bank of America account with account number ending #2110, to **DUKE**'s JPMC account with account number ending #1835, and to **LEWIS**'s Frost Bank account with account number ending #7319, such property having been derived from a specified unlawful activity, namely mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343:

| Count | Sender | Recipient | Date | Amount |
|---|---|---|---|---|
| 30 | Niyato | Broyles | 3/01/2016 | $11,000 |
| 31 | Niyato | Broyles | 4/26/2016 | $12,500 |
| 32 | Niyato | Duke | 3/01/2016 | $34,000 |
| 33 | Niyato | Duke | 5/09/2016 | $12,500 |
| 34 | Niyato | Lewis | 6/01/2016 | $14,000 |

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

16

## COUNTS THIRTY-FIVE THROUGH THIRTY-EIGHT
## (MONEY LAUNDERING – INTERNATIONAL - 18 U.S.C. Section 1956(a)(2)(A))

29. The Grand Jury realleges and incorporates by reference paragraphs 1 through 11 and 13 through 17 of this Indictment.

30. On or about the respective dates set forth below, each such date constituting a separate count of this Indictment, within the Western District of North Carolina and elsewhere, the defendant

**KRISTIAN F. SIERP**,

together with others known and unknown to the Grand Jury, did knowingly transport, transmit, and transfer, and cause to be transported, transmitted, and transferred, monetary instruments and funds from and through a place in the United States to a place outside of the United States, that is the ATM withdrawal of funds in Costa Rica from his domestic SunTrust bank account, with the intent to promote the carrying on of specified unlawful activity, namely mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343:

| Count | Receiver | Transfer Sent From | ATM Transfer Received | Date | Amount |
|---|---|---|---|---|---|
| 35 | Sierp | Atlanta, GA | Costa Rica | 5/09/2016 | $503.76 |
| 36 | Sierp | Atlanta, GA | Costa Rica | 5/11/2016 | $503.75 |
| 37 | Sierp | Atlanta, GA | Costa Rica | 5/13/2016 | $503.68 |
| 38 | Sierp | Atlanta, GA | Costa Rica | 5/16/2016 | $504.75 |

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) & (i)(1)(B).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this Indictment;

b. All property involved in such violations or traceable to property involved in such violations; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendants to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

- A forfeiture money judgment in the amount of at least $2,597,910, such amount constituting the proceeds of the violations set forth in this Indictment;

- Approximately $40,672.71 in funds seized during the investigation from SunTrust Account XXXXXXXXX9740 and Account XXXXXXXXX8252, such accounts held by or for the benefit of Kristian F. Sierp;

- Approximately $305,096.58 seized during the investigation from J.P. Morgan Chase Account XXXXX9352 and Account XXXXXX6166, such accounts held by or for the benefit of Niyato Industries, Inc. and/or Robert Leslie Stencil;

- Approximately $100,000 seized from a law firm to which Niyato Industries, Inc. had forwarded fraud proceeds;

- One 2012 Ford LGT Conventional F-150, VIN 1FTNF1CFXCKD28495, seized as evidence in this matter; and

- One 2015 Ford F-350, VIN 1FT8W3B63FEB06250, seized as evidence in this matter.

A TRUE BILL

JILL WESTMORELAND ROSE,
UNITED STATES ATTORNEY

SANDRA MOSER
ACTING CHIEF, FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

WILLIAM H. BOWNE
William.Bowne2@usdoj.gov
CHRISTOPHER FENTON
christopher.fenton@usdoj.gov
Trial Attorneys
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
(202) 514-0660