UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-CR-00221-MOC-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Vs. ) | ORDER |
| ) | |
| MICHAEL ALLEN DUKE, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on defendant Duke's Motion to Sever Defendant (#282) from co-defendants Robert Stencil ("Mr. Stencil"), Ludmila Stencil ("Ms. Stencil"), and Lewis, and the request that he be tried after the resolution of his co-defendants' cases. This matter was addressed briefly in open court on October 15, 2018 during a previously scheduled Status Conference attended by all parties. Having read defendant's Motion to Sever and the government's Response in Opposition (#283) at the time of the hearing, the Court orally denied the Motion to Sever. The Court refrained from providing a detailed explanation during the hearing so as not to detract from the intended purpose of the Status Conference, but it will now discuss its reasons.

**FINDINGS AND CONCLUSIONS**

**I.     Motion for Severance: Applicable Standard**

Motions to sever are governed by Rules 8 and 14 of the Federal Rules of Criminal Procedure and require a two-step analysis. See 8 Moore's Federal Practice, ¶ 13.03[2] at 13–9 (Matthew Bender). First, defendants must have been properly joined by the Grand Jury in accordance with Rule 8. Second, even if properly joined under Rule 8, joinder must not be unfairly

1

prejudicial to defendant when "weighed against the court's interest in judicial economy" under Rule 14. United States v. Adoma, No. 3:14-cr-00229-MOC, 2017 WL 220132, at *2 (W.D.N.C. Jan. 18, 2017).

Under Rule 8, joinder of defendants in one indictment is appropriate "where the defendants are alleged to have participated in the same act or transaction constituting an offense or offenses against the United States." Fed. R. Crim. P. 8(a). The Fourth Circuit strictly adheres to the principle that "when defendants are indicted together, they should be tried together." United States v. Dinkins, 691 F.3d 358, 368 (4th Cir. 2012) (citing United States v. Singh, 518 F.3d 236, 255 (4th Cir. 2008)); see also United States v. Medford, 661 F.3d 746, 753 (4th Cir. 2011) ("[T]here is a presumption in favor of joint trials in cases in which defendants have been indicted together."); United States v. Shealey, 641 F.3d 627, 633 (4th Cir. 2011). This presumption is especially strong in conspiracy cases, such as this one. See, e.g., United States v. Lawson, 677 F.3d 629, 639 (4th Cir. 2012); United States v. Brooks, 957 F.2d 1138, 1145 (4th Cir. 1992); United States v. Tedder, 801 F.2d 1437, 1450 (4th Cir. 1986) ("The gravamen of conspiracy is that each conspirator is fully liable for the acts of all coconspirators in furtherance of the conspiracy. Thus, joinder is highly favored in conspiracy cases, over and above the general disposition towards joinder for reasons of efficiency and judicial economy."). As such, severance pursuant to Rule 14 is rarely granted. Dinkins, 691 F.3d at 368; United States v. Hornsby, 666 F.3d 296, 309 (4th Cir. 2012) (noting when offenses "are properly joined under Rule 8(a), severance of the offenses is rare").

Rule 14 calls for severance of claims or defendants if the joinder of either is prejudicial. Any such prejudice must be weighed against judicial economy. Defendants seeking severance face a high burden. As the moving party, the defendant "must establish that actual prejudice would result from a joint trial." United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995) (quotations and

citations omitted). Severance should be granted only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants," or to "prevent the jury from making a reliable judgment about guilt or innocence." Shealey, 641 F.3d at 633 ("Appellant's theory of injury is indirect at best, since it assumes that the delay strengthened the Government's case and, in turn, weakened his own case. But that fails to articulate any injury to 'a specific trial right.'") (quoting Zafiro v. United States, 506 U.S. 534, 539 (1993)). It is not sufficient that defendant states he would have a better chance of acquittal if severance were granted. Reavis, 48 F.3d at 767. Prejudice exists where joinder is likely to infringe on defendant's Sixth Amendment right to a fair trial. Adoma, 2017 WL 220132, at *2 (citing United States v. Boffa, 513 F. Supp. 444 (D. Del. 1980)). The moving defendant must, therefore, show his joinder in co-defendants' trial will impair his constitutional right to a fair trial. 8 Moore's Federal Practice ¶ 14.02[1], 14–5, 6 (citing United States v. LaRouche, 896 F.2d 815 (4th Cir. 1990)).

**II.    Discussion**

As to the first determination, Duke does not challenge his joinder as a co-defendant under Rule 8. In any event, the indictment against Duke and co-defendants allege that they were all involved in the same acts and transactions with respect to the same fraudulent venture and conspiracy. As such, the Court notes that Duke was properly joined as a defendant in this case.

As to the second determination, Duke gives three reasons why severance is necessary to prevent prejudice against him at trial.

**A.    Asserted Need for Co-Defendant's Testimony as a Basis for Severance**

First, Duke argues severance is necessary to prevent prejudice because he requires the testimony of his co-defendant, Mr. Stencil,[1] to prove his innocence and present a full and complete

---

[1] Duke also states he may require testimony from Ms. Stencil, albeit to a lesser extent. All findings made herein with respect to Mr. Stencil apply with equal force to Ms. Stencil, who allegedly worked with her husband to draft and

3

defense at trial. He correctly notes that undue prejudice may arise where the movant's defense requires testimony of a co-defendant, who has or will likely assert his or her constitutional right not to testify, and that such situation may provide grounds for severance. However, a defendant is far less likely to succeed in severing himself from a joint trial when the request is based on the asserted need for a co-defendant's testimony. See Reavis, 48 F.3d at 767.

Under Fourth Circuit precedent, in cases in which the motion to sever is based on an asserted need for a co-defendant's testimony, the moving defendant must establish the following four factors:

(1) a bona fide need for the testimony of his co-defendant;

(2) the likelihood that the co-defendant would testify at a second trial and waive his Fifth Amendment privilege;

(3) the substance of his co-defendant's testimony; and

(4) the exculpatory nature and effect of such testimony.

United States v. Parodi, 703 F.2d 768, 779 (4th Cir. 1983). This is not a balancing test. All four factors under Parodi must be established. Id. For the reasons stated below, Duke has not satisfied the second prong and, consequently, has not met his burden under Parodi. The Court need not evaluate the remaining three factors. See Medford, 661 F.3d at 754 ("The district court, upon concluding that the second Parodi factor had not been satisfied, therefore was not required to examine the remaining factors in conducting its Parodi analysis.")

To satisfy the second prong of the Parodi test, a defendant must show that the co-defendant whose testimony is sought has unequivocally indicated a willingness to waive and testify at a severed trial regardless of whether that severed trial occurs before or after his or her own trial.

---

distribute promotional materials containing false and misleading statements, process investor funds, and spend the money.

See, e.g., Reavis, 48 F.3d at 767. This element is not satisfied where a co-defendant places conditions on his willingness to testify. Parodi, 703 F.2d at 77; Rusher, 966 F.2d at 878 (finding severance not required where "the co-defendant would testify only if his case came first"); see, e.g., Medford, 661 F.3d at 754 ("Penland's representation was, at best, equivocal regarding his willingness to waive his Fifth Amendment rights if the trials were severed. Accordingly, we conclude that the district court did not err in determining that Medford failed to satisfy the second Parodi factor.") At present, Mr. Stencil has not indicated that he is willing to testify for Duke at all, much less placed conditions on his willingness to do so.

Duke admits that Mr. Stencil has not agreed to surrender his Fifth Amendment rights and acknowledges he is "unlikely" to ever do so, based on his conversations with Mr. Stencil's counsel. Despite Mr. Stencil's relative silence on the matter, Duke believes that if Mr. Stencil was tried first, then "Mr. Stencil would have no reason not to testify in support of Duke's defense." Def.'s Mot. (#282) at 6. Essentially, Duke is asking the Court to ignore binding Fourth Circuit law to permit Mr. Stencil to condition his willingness to testify on him being tried before Duke. But acceding to this request would "create a situation where, following his own trial, the witness would be more inclined to 'throw a bone' to his codefendants by testifying favorably to them because his own case had been disposed of and he had little to lose by testifying." Reavis, 48 F.3d at 767 (quoting United States v. Becker, 585 F.2d 703, 706 (4th Cir. 1978)).

The likelihood that Mr. Stencil would testify at Duke's second trial and waive his Fifth Amendment privilege is, therefore, even *less* here than in cases where the co-defendant provided conditional willingness. For this reason, the Court finds Duke is unable to meet his burden and make the requisite showing under Parodi because he has failed to establish the second factor. Accord Medford, 661 F.3d at 753–54 (affirming denial of a defendant's motion to sever where a

co-defendant witness was unwilling to make an unconditional offer to testify on the defendant's behalf).

B.  **Antagonistic Defenses as a Basis for Severance**

Duke's second-asserted basis for severance is that his trial strategy may include defenses antagonistic to those of Mr. Stencil.  Fourth Circuit case law provides that severance based on antagonistic defenses is required where "the conflict is so prejudicial that the differences are irreconcilable, and that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." United States v. Spitler, 800 F.2d 1267, 1272 (4th Cir. 1986) (quotations omitted) (quoting Becker, 585 F.2d at 707).  In other words, courts should sever co-defendants where there is "such a stark contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other." United States v. Najjar, 300 F.3d 466, 474 (4th Cir. 2002); see also Zafiro, 506 U.S. at 539 (holding that a district court should grant severance where "there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence").

However, a defendant is not entitled to severance "merely because his defense conflicts with or is antagonistic to a codefendant's defense." Zafiro, 506 U.S. at 538; Spitler, 800 F.2d at 1271 ("hostility among defendants . . . or the desire of one to exculpate himself by inculpating another [are] insufficient grounds to require separate trials").  "This is true, even where one defendant desires to exculpate himself by inculpating a codefendant." United States v. Allen, 491 F.3d 178, 189 (4th Cir. 2007); see also United States v. Smith, 44 F.3d 1259, 1266–67 (4th Cir. 1995) ("Because joint participants in a scheme often will point the finger at each other to deflect guilt from themselves or will attempt to lessen the importance of their role, a certain amount of conflict among defendants is inherent in most multi-defendant trials.").  Severance based on

6

antagonistic defenses requires "more than finger pointing." Najjar, 300 F.3d at 474 (citations omitted). Rather, "[t]here must be such a sharp contrast presented by the defenses that the jury is presented with the proposition that to believe the core of one defense it must disbelieve the core of the other, or that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." Id.

Duke claims that his defense and Mr. Stencil's defense are more than merely antagonistic, they are irreconcilable. He also claims that these defenses are irreconcilably mutually exclusive of one another because to believe one requires complete disbelief of the other—i.e., either Mr. Stencil is guilty or Duke is guilty. But his characterizations are overly simplistic and, to some extent, appear designed to manufacture mutual exclusivity between possible defenses. Duke says his defense is that he played a limited role promoting Niyato stock, he relied on Mr. Stencil to provide him with truthful information to use when soliciting investors, and that, to the extent investors were misled, he too was misled by Mr. Stencil. Def.'s Mot. (#282) at 4, 7. Importantly, Duke omits mention of key allegations against him: namely, that he and Mr. Stencil had an arrangement whereby Duke received a 50 percent cut of the money that he solicited from investors, and that he and Mr. Stencil failed to disclose the arrangement to the investors and, in fact, affirmatively misrepresented in the Private Placement Memorandum how Niyato intended to use investor proceeds. Assuming that the government has some evidence to back up these allegations, these allegations, if proved, greatly undermine the plausibility of Duke's defense that he was misled.

As the government noted in its Response to the Motion to Sever, the allegations regarding Duke's agreement to split funds are important details because they speak to his knowledge of the fraud and his intent with respect to the alleged fraudulent scheme. Gov't Resp. (#283) at 8. Indeed,

7

it is arguable that a 50 percent commission on the sale of stock or securities is a red flag for even a novice broker.  Thus, Duke's guilt or innocence will not turn on the simple question of whether the jury believes he was misled about the business and operations and/or stretched the truth to make sales.  Rather, the question of his guilt or innocence involves a myriad of considerations, including evidence of Duke's profit sharing agreement with Mr. Stencil and the implications of such agreement in terms of Duke's knowledge and intent regarding the fraudulent scheme.

Even if the parties assert incompatible defenses—namely, that each was misled by the other—such defenses are not irreconcilably mutually exclusive of one another because to believe one does *not* require complete disbelief of the other – i.e., the jury could believe that each mislead the another, that both are lying and that both were fully apprised of the scheme, that neither is lying and the whole scheme was the product of a misunderstanding or lack of knowledge, etc.  Thus, Duke's fate does not rest on Mr. Stencil's innocence or guilt.  As such, the possible antagonistic defenses are not likely to lead the jury to unjustifiably infer that this conflict alone demonstrates that both are guilty.  Since Duke does not claim that he and Mr. Stencil will have conflicting defenses with respect to his arrangement with Mr. Stencil to split investor funds 5/50, and because it is unlikely Duke's counsel will be incentivized to act as a second prosecutor and attack Mr. Stencil about the fifty percent cut he paid to Duke, Duke's contention that the presence of antagonistic defenses, which are not outcome determinative of either parties' fate, is not a sufficient basis for severing him as a defendant from the case.

C. **Undue Delay as a Basis for Severance**

Duke's third and final argument is that he should be severed as a defendant because Mr. Stencil and co-defendant Lewis have serious medical conditions "which will prevent consistent and timely attendance at trial," thereby unfairly increasing the expense for Duke.

Severance may be appropriate where a co-defendant's medical condition would greatly extend a trial's duration. See United States v. Gunter, No. 12-394-4, 2013 WL 5942341, at *2 (E.D. Pa. Nov. 5, 2013) (granting a motion to sever based on a defendant's need for dialysis three days per week). Courts have also granted motions to sever defendants on the basis of severe illnesses that create undue delays for their co-defendant. United States v. Stockman, No. 09-50029-KES, 2010 WL 959928, at *1 (D.S.D. 2010) (holding that the delays caused by a seriously ill co-defendant are good cause for severance and that various courts "have reached the same conclusion"); see also United States v. Barnwell, 477 F.3d 844, 847 (6th Cir. 2007) (noting that the trial court granted severance to two co-defendants during trial due to the illness of one of their defense attorneys); United States v. Persico, No. S 84 Cr. 809 (JFK), 1986 WL 4699, at *1 (S.D.N.Y. 1986) (noting that two co-defendants were severed pretrial due to grave illnesses).

In Gunter, the Eastern District of Pennsylvania granted a motion to sever where, as here, the defendant needed dialysis three days per week. 2013 WL 5942341, at *2. However, this case and others cited by Duke in his brief, all concern situations in which defendants had terminal or very serious illnesses that implicated their physical competence to stand trial. See id. at *2 (finding that defendant was physically incompetent to stand trial and that trial posed a threat to his life where the defendant's "health problems appear to be permanent" and "his medical prognosis …[was] poor and not likely to improve" because he was diagnosed with bladder cancer, prostate cancer, lung cancer, hypertension, and hearing loss, and required dialysis); Stockman, 2010 WL 959928, at *1 ("[The defendant] alleges that [his co-defendant] has suffered a severe and extensive brain injury from a stroke or stroke-like incident and is not currently competent to proceed to trial."); Persico, 1986 WL 4699, at *1 ("Two were severed pretrial due to grave illnesses.").

9

Mr. Stencil and Lewis's conditions are not "grave" or "terminal" illnesses. Nor has Duke moved this Court to deem them physically incompetent to stand trial. In fact, based on oral representations by Mr. Stencil's counsel during the October 15, 2018 Status Conference, it appears that Mr. Stencil has been undergoing rehabilitation for his cardiac event and is expected to potentially recover within a matter of weeks or months following treatment. With respect to Lewis, the Court understands only that he is required to receive dialysis three days a week. Duke seems to believe those three days will be off limits for trial, hypothesizing "this fifteen (15)-day trial will take a minimum of eight (8) weeks to be completed." Def.'s Mot. (#282) at 10. However, Lewis's attorney informed the Court during the Status Conference hearing that accommodations have been made to allow Lewis's dialysis treatments to take place closer to 5:00 p.m. on trial dates. While court may be dismissed a bit early on those days, the Court does not expect this will significantly impact the overall duration of the trial.

Furthermore, the government has expressed a willingness to work with co-defendants' attorneys to accommodate any physical limitations in a manner that avoids imposing an undue burden on co-defendants. For example, the government has identified dialysis centers within Lewis's network that are close to the courthouse and open nearly twenty-four hours a day, six days a week. The government has also consented to modifications of the trial schedule "to accommodate Lewis' medical needs." See Gov't Resp. (#283) at 10.

The Court is likewise willing to accommodate the parties' schedules as needed. During the October 15 Status Conference, the Court suggested moving the trial from Charlotte to another courthouse in the district. Both Asheville and Statesville offer more flexible trial calendars and will be more conducive for trial given the ongoing heavy and loud construction at the Charlotte federal courthouse. The Court also agreed to start the trial several weeks earlier than its trial

calendar currently provides, moving the start date for trial from mid-January 2019 to the first week of January 2019. Combined, these solutions would give the parties an entire month to try the case without interruption, if such time is required.[2]

Multiple accommodations have been or can be put in place to ensure that co-defendants' medical treatments will not significantly impair the progression of trial. Such accommodations provide a reasonable and appropriate solution to Duke's anticipated issues and promote judicial economy by allowing for one slightly longer trial for all defendants rather than two separate trials. In addition, the Court will provide limiting instructions to jurors to mitigate prejudice. The Fourth Circuit has long favored limiting instructions to the jury as opposed to requiring multiple trials of the same offense or offenses. See, e.g., United States v. Mir, 525 F.3d 351, 357–58 (4th Cir. 2008). Limiting instructions are an appropriate remedy to the present situation because they will sufficiently mitigate the likelihood and effects of any potential prejudice against Duke at trial while also maximizing judicial economy.

In light of the foregoing, this Court will continue to adhere to the well-established principle that defendants who are charged in the same criminal conspiracy should be tried together. Reavis, 48 F.3d at 767; Brooks, 957 F.2d at 1145; Parodi, 703 F.2d at 779. Joint trials are favored in those cases in which defendants have been indicted together for the sake of judicial economy. Rusher, 966 F.2d at 877; United States v. McManus, 23 F.3d 878, 883 (4th Cir. 1994). For the reasons stated above, the Court enters the following Order denying the Motion to Sever Defendant (#282).

---

[2] At present, moving the trial to another location in the district is simply a suggestion that the parties should seriously consider. But the Court is not against moving the trial elsewhere in the district without the parties' consent if Charlotte does not have courtrooms available or if construction noises are likely to disrupt trial or disturb jurors. In the end, it is within the Court's discretion to hold a trial anywhere within the district.

## ORDER

**IT IS, THEREFORE, ORDERED** that that, for the reasons stated above and in open court on October 15, 2018, defendant Duke's Motion to Sever (#282) is **DENIED** and this matter will proceed as a joint trial.

Signed: October 22, 2018

Max O. Cogburn Jr
United States District Judge