UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cr-221-MOC-DCK-7

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **MICHAEL ALLEN DUKE,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate

Release/Reduction of Sentence. (Doc. No. 549), and on Defendant's pro se Emergency Motion

for Temporary Release, (Doc. No. 568).[1] The Government has responded in opposition to the

motions. For the following reasons, both motions are denied.

## I.     BACKGROUND

On October 18, 2017, Robert Leslie Stencil, Ludmila O. Stencil, and Michael Allen

Duke, along with their codefendants, were charged in a 38-count indictment arising from their

2012 to 2016 involvement in a high-yield investment fraud scheme whereby defendants sold

stock in Niyato Industries Inc. ("Niyato") to victims based on numerous false and misleading

statements. (Doc. No. 151). Count 1 charged conspiracy to commit mail and wire fraud, in

violation of 18 U.S.C. § 1349; Counts 2 through 15 charged mail fraud, in violation of 18 U.S.C.

§ 1341; Counts 16 through 29 charged wire fraud, in violation of 18 U.S.C. § 1343; and Counts

---

[1] Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) in his motion for compassionate release, and he seeks temporary release pending his resentencing before this Court, which has already occurred.

-1-

30 through 34 charged money laundering, in violation of 18 U.S.C. § 1957(a). (Id.).

The case proceeded to a trial before a jury on January 7, 2019. After hearing testimony from witnesses and reviewing the evidence, the jury convicted Duke on the conspiracy count and the mail fraud, wire fraud and money laundering counts that specifically related to the victims to whom Duke had sold Niyato stock. (Doc. No. 338).

Duke was originally scheduled to be sentenced on August 20, 2019, but he filed three successive motions to continue his sentencing hearing, which were granted. (Doc. Nos. 413, 432, and 439). As a result, Duke was not sentenced until January 23, 2020. Following a lengthy hearing, at which the Court resolved numerous objections raised by Duke, the Court sentenced Duke to seventy (70) months' imprisonment. Duke filed a notice of appeal on February 7, 2020.

Duke was originally directed to self-surrender on March 17, 2020, but he filed two successive motions to extend his date to self-report, which were granted, so that he could undergo an elective medical procedure. (Doc. Nos. 485, 495). On August 3, 2020, Duke moved to extend his self-surrender date for a third time. (Doc. No. 540). Duke based his motion on two claimed conditions that purportedly put him at risk of severe illness should he contract COVID-19: (1) a chronic kidney condition, and (2) a body mass index (or "BMI") slightly above 30. On August 4, 2020, Duke moved separately for release pending appeal pursuant to Section 3143(b). (Doc. No. 541). On August 19, 2020, the Court denied both of Duke's motions following a hearing and ordered him to self-report at a place and time designated by BOP. (Doc. No. 544).

On September 22, 2020, Duke reported to El Reno FCI. After serving around 100 days of his 70-month sentence, Duke submitted a request to the Warden for compassionate release. Duke claimed he was at higher risk of severe complications were he to contract COVID-19 because of

a self-diagnosed kidney condition, slightly elevated BMI, and purported neurologic condition.

He also argued that he should be released early because he is the only person willing and able to

care for his aging mother. After the Warden denied Duke's request, Duke sought relief from this

Court on the same grounds.

On March 16, 2021, the Fourth Circuit Court of Appeals affirmed in part and vacated and

remanded to this Court for resentencing, after the Fourth Circuit found that this Court used an

incorrect offense level to calculate Duke's guidelines range. On July 7, 2021, Duke filed the

pending motion for temporary release, seeking temporary release while his resentencing was

pending. This Court resentenced Duke on August 19, 2021, sentencing him to a total of 60

months in prison.

## II.    DISCUSSION

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239

(Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a

modification of his sentence for "extraordinary and compelling reasons," if the defendant has

"fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier." Before The First Step Act amended §

3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and

compelling reasons if the Bureau of Prisons filed a motion seeking that relief.

Although not binding on this Court, see United States v. McCoy, 981 F.3d 271, 282 (4th

Cir. 2020), the commentary to Sentencing Guidelines § 1B1.13 provides specific and limited

grounds for release under § 3582(c)(1)(A). These include (1) a terminal illness; or (2) a serious

-3-

physical or medical condition, a serious functional or cognitive impairment, or deteriorating

physical or mental health because of the aging process that "substantially diminishes the ability

of the defendant to provide self-care within the environment of a correctional facility and from

which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). A defendant's age may

also warrant compassionate release, if (1) the defendant is at least 65 years old, (2) is

experiencing a serious deterioration in physical or mental health because of the aging process,

and (3) has served at least 10 years or 75% of his term of imprisonment, whichever is less. Id., §

1B1.13 cmt. n.1(B). Congress has made clear that rehabilitation of the defendant alone "shall not

be considered an extraordinary and compelling reason" for a modification. 28 U.S.C. § 994(t).

In McCoy, the Fourth Circuit held that district courts are not limited to the grounds for

compassionate release identified in section 1B1.13 and that a district court may "treat[] as [an]

'extraordinary and compelling reason[]' for compassionate release the severity of the

[defendant's] § 924(c) sentences and the extent of the disparity between the [defendant's]

sentences and those provided for under the First Step Act." 981 F.3d at 286. The court must

make an individualized determination that the defendant has identified an extraordinary and

compelling reason for compassionate release, considering, for example, the length of time

already served, any rehabilitative efforts made during the defendant's time in the Bureau of

Prisons, the defendant's prior criminal history, and the defendant's age at the time he committed

his offenses. See id. Although the Fourth Circuit held in McCoy that courts are not limited to the

grounds for compassionate release identified in section 1B1.13, the Fourth Circuit has also

recognized that this section remains helpful guidance and may continue to define the health-

related circumstances that warrant compassionate release when a defendant files a motion

-4-

seeking that relief. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021).

Duke has not demonstrated "extraordinary and compelling reasons" warranting release. Duke's first argument for a sentence reduction is based on his concerns about COVID-19. As this Court recently explained, "the mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction." United States v. Cloud, No. 3:19-CR-224-MOC-DSC, 2021 WL 354125, at *3 (W.D.N.C. Feb. 2, 2021). Rather, "[t]he conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population." Id. Therefore, "if an inmate has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of 'extraordinary and compelling reasons.'" Id.

Duke fails to make this showing. He argues that he is at a heightened risk of becoming seriously ill from COVID-19 based on: (i) a self-diagnosed kidney condition; (ii) his slightly elevated BMI; and (iii) a purported neurologic condition. (Doc. No. 549 at 1, 13-21). His claims are without merit and his motion should be denied. Duke previously argued, in August 2020, that he should not begin serving his sentence until after the pandemic because of his purported kidney condition and BMI. (Doc. Nos. 540, 541). This Court considered and rejected these arguments and ordered Duke to self-report when directed by BOP. (Doc. No. 544). Duke now asks this Court to revisit and reverse its prior decision, but he fails to offer any reason why it should do so, let alone a reason that meets the standard of "extraordinary and compelling." As the government previously explained, if Duke had a condition serious enough to warrant early release from

-5-

prison, one would expect he would have obtained a letter from his treating physician that clearly diagnoses him with that condition and explains to the Court that his condition elevates his risk of becoming seriously ill from COVID-19. Duke still offers no such evidence. Instead, Duke re-submits the same exhibits that this Court previously rejected as insufficient evidence.

In addition, Duke's claim that he has a neurologic condition that places him at greater risk of becoming seriously ill from COVID-19 is unsubstantiated. The only document Duke submits is a December 14, 2020, letter from Dr. Terry Naramor, and Duke mischaracterizes its contents. (Doc. No. 549 at 17; Doc. No. 550 at Ex. K). Dr. Naramor has not diagnosed Duke with a neurologic condition, let alone one that places him at a greater health risk. Dr. Naramor states only that, as a middle-aged person, Duke is "more at risk than younger individuals," and that "Duke reported having chronic medical conditions." (See Doc. No. 550 at Ex. K).

Duke also fails to establish an "extraordinary and compelling reason" for a sentence reduction based on COVID-19 because Duke already tested positive for COVID-19 and fully recovered without suffering any post-recovery side effects. Moreover, the medical care that El Reno FCI has provided and continues to provide to Duke appears to be adequate and there is no evidence to suggest otherwise. See Cloud, 2021 WL 354125, at *4 (denying Section 3582(c) motion where defendant put forth no evidence that he had any significant side effects or lingering medical issues due to COVID-19, had been unable to provide self-care while in custody, or received inadequate medical care).

Duke's second argument for a sentence reduction is based on his elderly mother's purported need for 24/7 medical care and Duke's claim that he is the only person willing and able to provide care. (Doc. No. 549 at 1, 10–13). Duke's entire argument rests on a one-line letter

from his mother's physician, Dr. Keung Lee, who wrote: "To Whom It My Concern: My patient, Caroline Duke [], is in need of 24 care in her home due to her medical conditions." (Doc. No. 550 at Ex. B). Postal Inspector Mark Heath interviewed Dr. Lee about this letter. Dr. Lee was unaware that his letter was being used by Ms. Duke's son to seek early release from prison. He explained that his intent in writing the letter was for Ms. Duke to be eligible to obtain professional home health care, although Ms. Duke told him she would be more comfortable to have family monitor her rather than someone from home health that she does not know. Dr. Lee further explained that Ms. Duke's situation is neither "dire" nor "critical." He said that Ms. Duke has been on her own for a long time and that her conditions have not changed–she is simply aging. Duke's release is therefore not a matter of necessity, but a matter of his mother's preference. Such preference is an insufficient and improper basis to reduce Duke's sentence.

The fact that Duke remains a danger to the community also weighs against granting his motion for compassionate release. Duke is a serial fraudster, who was previously convicted of securities fraud and then used an alias to conceal his identity so that he could continue to sell stock over the telephone. Indeed, at trial, the government introduced evidence showing that from at least 2012 through 2016 (when he was indicted in this case), Duke used the alias "Mike West" to sell numerous stocks by telephone, including Green Automotive Company, Intertech Solutions, Inc., New Global Energy, and Niyato, among others, and that they were all worthless. The government also introduced evidence that Duke targeted vulnerable victims, including elderly victims, whom he repeatedly targeted for additional worthless stock sales.

Moreover, Duke remains unrepentant and, in the face of overwhelming evidence, continues to maintain that he did nothing wrong. (See, e.g., Doc. No. 549 at 24–25, where Duke

-7-

maintains that selling Niyato stock was a legitimate job and that he was convicted because his counsel misspoke during closing arguments). He also continues to make false and misleading statements, including in his submissions to this Court. For example, as described above, Duke grossly misrepresented the nature and contents of Dr. Naramor's letter, claiming that it said he had a neurologic condition that put him at greater risk of becoming seriously ill from COVID-19 when, in truth, it said no such thing.[2]

In support of his motion, Duke repeats his claim that the Court should grant his motion to remedy a sentencing disparity between him and his co-defendants Dennis Swerdlen, Paula Saccomanno, Nicholas Fleming, and Martin Lewis. (Doc. No. 549 at 26). The Court already considered and rejected this argument on numerous occasions, including at and after sentencing. Duke is not similarly situated to any of these co-defendants. Duke was convicted after a lengthy trial and has never accepted responsibility for his crimes. Swerdlen, Saccomanno, Fleming, and Lewis all pleaded guilty pursuant to plea agreements, which included certain sentencing stipulations reflecting the information known and available to the government before trial, and they cooperated with the government's investigation, even providing testimony at trial. Duke was charged with and convicted of money laundering; Swerdlen, Saccomanno, Fleming, and Lewis were not. Duke was involved from the beginning of the conspiracy until the end; Swerdlen, Saccomanno, Fleming, and Lewis joined much later and were indirectly recruited by Duke via co-conspirator Daniel Broyles.

---

[2] Similarly, Duke falsely claims that Craig Ongley, who had previously written a letter of good character on Duke's behalf, is an "SEC attorney." (Doc. No. 549 at 25). Mr. Ongley does not work for the SEC or any other federal agency. Rather, Mr. Ongley was Duke's attorney whom Duke paid to provide legal advice.

In sum, for all these reasons, the Court denies Duke's motion for compassionate release. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Duke's motion for temporary release is also denied, as he sought temporary release during the pendency of his resentencing, which has already occurred. Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 549), is **DENIED**. Furthermore, Defendant's pro se Emergency Motion for Temporary Release, (Doc. No. 568), is also **DENIED**.

Signed: September 27, 2021

Max O. Cogburn Jr
United States District Judge